## Chase, Appellant, *v.* Provident Life and Trust Company.

*Contract—Advanced money—Conveyance*

In an action against a trust company, it appeared from the statement and affidavit of defense that about a year before the action was brought one B. applied to plaintiff for a loan of $57,000 which nominally was granted by plaintiff. The loan was to be made up of $37,500 cash and a conveyance by plaintiff of $19,500 in value of land. Plaintiff then applied to the trust company, defendant, to loan the cash to B. on bonds and mortgages of $57,000 which B. had proposed to give to plaintiff. The

trust company agreed to furnish the cash, $37,500.    Subsequently the trust company addressed itself to a title company with which plaintiff had been negotiating, requesting the title company as insurers of the title of the land covered by the mortgages to observe certain forms and stipulations and stating that the trust company would hand over $37,500 cash to the title company on receipt of settlement certificate and compliance with certain terms specified.    Subsequently the trust company. paid to the title company the $37,500, less a small fee.    No settlement certificate had yet been issued, nor insurance policies delivered to the trust company, nor had the mortgage and bonds of B. been delivered, although plaintiff had executed his deed for the $19,500 for real estate and had delivered it to the title company which had placed it upon record.    The title company gave a receipt for the money to the trust company, which stipulated " if settlement is not made, money is to be returned on demand with interest." When the transaction was in this unfinished position plaintiff and the trust company entered into an agreement by which plaintiff was to have an interest in the mortgages to the amount of $19,500 subordinate to the $37,500 of the trust company.    The title company and B. failed to come to terms and subsequently the title company returned the money to the trust company with the statement that the parties were unable to complete their arrangements.    *Held*, that plaintiff's rule for judgment for $19,500 against the trust company for want of a sufficient affidavit of defense was properly discharged.

*Appeals—Judgment—Affidavit of defense—Act of April* 18, 1874.

The Act of April 18, 1874, P. L. 64, authorizing appeals from the common pleas where the court refuses to enter judgment for want of a sufficient affidavit of defense, criticised.

Argued Jan. 20, 1903.    Appeal, No. 291, Jan. T., 1902, by plaintiff, from order of C. P. No. 4, Phila. Co., June T., 1902, No. 2948, discharging rule for judgment for want of a sufficient affidavit of defense in case of Charles A. Chase v. Provident Life and Trust Company.    Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ.    Affirmed.

Rule for judgment for want of a sufficient affidavit of defense.

The averments of the statement of claim and the affidavit of defense are set forth in the opinion of the Supreme Court.

The court discharged the rule.

*Error assigned* was the order of the court.

*V. Gilpin Robinson,* with him  *Ernest L. Tustin,* for appel-

lant.—The insufficiency of the affidavit of defense is apparent when tested by the principles laid down in the following authorities : Odd Fellows' Bank v. Miller, 179 Pa. 412 ; Erie City v. Butler, 120 Pa. 374 ; Moore v. Phillips, 154 Pa. 204 ; Ogden v. Beatty, 137 Pa. 197 ; Bank v. Stadelman, 153 Pa. 634 ; Kaufman v. Cooper Iron Mining Co., 105 Pa. 537 ; Noble v. Kreuzkamp, 111 Pa. 68 ; Sanders v. Sharp, 153 Pa. 555 ; Githers v. Clarke, 158 Pa. 616 ; Harrisburg v. Baptist, 156 Pa. 526 ; Pittsburg v. MacConnell, 130 Pa. 463.

If the holder of collateral security through his negligence permit it to became worthless, he makes the loss his own: Hanna v. Holton, 78 Pa. 334 ; Beale v. Bank, 5 Watts, 529 ; McQueen's App., 104 Pa. 595.

*John G. Johnson*, with him *James Wilson Bayard*, for appellee.—In doubtful cases, and especially in those requiring broad inquiry into facts, where the court refuses judgment, the matter in controversy should go to the jury, as the proper tribunal to decide the cause under proper instructions from the court: Griffith v. Sitgreaves, 81 *Pa. 378 ; Radcliffe v. Herbst, 135 Pa. 568 ; Ætna Ins. Co. v. Confer, 158 Pa. 598 ; Security Savings & Loan Association v. Anderson, 172 Pa. 305 ; Ensign et al. v. Kindred, 163 Pa. 638 ; Kidder Elevator Interlock Company v. Muckle, 198 Pa. 388 ; Isaacs v. Mutual Reserve Fund Life Assn., 189 Pa. 610 ; Holland v. Sunbury Iron Works, 9 Pa. Superior Ct. 261 ; Arnold v. Stoner, 18 Pa. Superior Ct. 537.

An affidavit of defense is sufficient which denies explicitly any allegation of the statement, the proof of which is essential to plaintiff's recovery, or which sets up any fact which is a complete bar to such recovery : Philadelphia Brick Company v. Johnson Co., 162 Pa. 199 ; Murphy v. Taylor, 173 Pa. 317 ; Davis v. Koenig, 165 Pa. 347 ; Landis v. Western Pennsylvania Railroad Company, 133 Pa. 579 ; Twitchell v. McMurtrie, 77 Pa. 383 ; Hutton v. McLaughlin, 1 Pa. Superior Ct. 642 ; Wilde v. Morrell, 198 Pa. 411 ; Kaufman v. Cooper Iron Mining Co., 105 Pa. 537.

OPINION BY MR. JUSTICE DEAN, October 12, 1903 :

From plaintiff's statement and papers filed and not disputed, we gather the averments of the following facts :

Ernest Burleigh, in July, 1901, being about to commence the erection of a number of houses at Fifty-sixth and Market streets in Philadelphia made a proposition to Charles A. Chase, this plaintiff, to sell and assign to him twenty-two bonds secured by mortgage upon the land and the buildings to be erected thereon at Fifty-sixth and Market streets, the bonds aggregating in amount on their face $57,000, the said Chase to pay him therefor $37,500 in cash, and in addition convey to him, Burleigh, certain other real estate owned by Chase in Philadelphia at a valuation of $19,500. Chase accepted the proposition upon the condition that the Land Title and Trust Company of Philadelphia should issue its certificate insuring the title to the land at Fifty-sixth and Market streets, also the completion of the buildings within a fixed period free from mechanics' liens ; and further, insuring that Chase should be able to realize the $37,500 on the land and property mortgaged ; that David E. Dallam, Esq., counsel for Chase, then applied for him to the Provident Life and Trust Company, this defendant, for a loan of $37,500 to be secured on the property by the twenty-two bonds and mortgages ; that the company approved the application and agreed to make the loan and specified to the Land Title and Trust Company the conditions upon which it had agreed to make it. Plaintiff after the agreement of the Provident Company to make the loan of $37,500 cash, delivered his deed to the Land Title Company, for the use of Burleigh of the $19,500, Philadelphia property. The conditions upon which the Provident agreed to make the loan, were, that the holder of the title was to execute directly to the Provident Company, twenty bonds and mortgages in the sum of $2,500 each at six per cent payable in three years, and two other bonds and mortgages for $3,500 payable at same date at same rate of interest ; the mortgages to be upon the properties shown by an appended blue print ; each of said bonds and mortgages to be accompanied by a separate title policy executed directly to the Provident Trust Company ; that in addition to the title policies, a further policy should be issued insuring the completion of the buildings within six months ; that fire insurance for the benefit of the Provident Company should be kept up. Then follows this stipulation, that the Provident Company on receipt of executed bonds and warrants, the settlement certifi-

cate of the Land Title Company, and order signed by Burleigh requesting that $37,500 should be handed over by the Provident Company to the Land Title Company for settlement, then, on performance of these conditions, that sum would be paid to the Land Title Company for settlement. Six separate communications passed from the Provident Company to the Land Title Company, the lending company in these communications insisting on changes in form and substance of the instruments framed to secure the loan, finally on August 1, 1901, mortgages for $57,000 were executed ready for delivery directly to the Provident Trust Company as required by it and the money was paid over to the Land Title Company. Then on March 26, 1902, Chase, this plaintiff, with whom the negotiation had been first opened by Burleigh for the loan, and who had opened communication with the Provident Trust Company to get the larger part of the money, entered into an agreement in writing with the Provident Trust Company, in which is stated as a preliminary, that whereas the Provident Trust Company has already advanced to Burleigh $37,500 on the bonds and mortgages, and whereas, it is the intention that Chase shall advance to Burleigh the remainder of the sum secured by said mortgages, therefore, it was agreed that Chase should have an interest in the mortgages to the extent of the moneys which he shall have advanced, second and subordinate to the rights of the Provident Company; that when the latter had been paid the $37,500 with interest and charges, or further, upon payment to said company by Chase of the $37,500 the company would assign to him or his nominees all the bonds and mortgages. It will be noticed this last agreement was made on March 26, 1902; afterwards, on April 9 following, the Land Title Company paid to and the Provident Trust Company received back the $37,500, and the lender, the Provident Trust Company, released the Title Company from all its obligations as insurers of the title and the completion of the buildings.

On these averments of facts Chase, the plaintiff, brought suit against the Provident Trust Company for the $19,500 excess, the excess over and above the $37,500 included in the bonds which the mortgages were given to secure. He alleges a loss to this extent, and averred that the Provident Company by releasing the Title Company has violated its agreement with

him of March 26, 1902, and in consequence he had lost the $19,500.

To this elaborate statement of plaintiff's claim defendant made affidavit of defense, averring that it had no connection whatever with the negotiations between Burleigh and Chase; that it agreed to loan to Burleigh on the bonds and mortgages amounting (face value, to $57,000) to $37,500 in cash; that it was not privy to nor concerned in the conveyance to Burleigh by Chase of certain real estate in Philadelphia of the value of $19,500; that in placing on record the deed for the same by the Land Title and Trust Company it was not, and did not, act as agent for the Provident Life and Trust Company; that it knew the Title Company only as an insurer of the title to the property; that the Title Company was to make settlement with the parties before handing over the money, and therefore it took from the Title Company a receipt which stipulates, " If settlement is not made money is to be returned on demand with interest." That the agreement with plaintiff was, necessarily, merely contingent upon a settlement and the loan being actually made to Burleigh upon the bonds and mortgages and the delivery of the same to the Provident Trust Company; that the settlement was not consummated nor was the loan made; that so far as defendant is informed no title ever vested in Burleigh, the mortgagor, and no bonds and mortgages were ever delivered by him to the Provident Company; that the money was returned to the Provident Trust Company by the Land Title Company, with the statement that the parties had been unable to complete their arrangements and make settlement.

Plaintiff took a rule on defendant for judgment for want of a sufficient affidavit of defense, which rule the court below discharged after hearing, without filing an opinion. We now have this appeal by plaintiff, alleging for error the decree of the court.

From the record this transaction is not clear. The exact relation of the parties to the loan and to each other, is either not fully disclosed by the statement of plaintiff and affidavit of defendant, or from its nature is somewhat obscure. Burleigh applied to Chase for a loan of $57,000, which nominally was granted by Chase, the loan to be made up of $37,500 cash and

a conveyance by Chase to Burleigh of $19,500 in value of other land in Philadelphia; Chase then, with no intention of loaning the $37,500 cash himself, applies to the Provident Life and Trust Company to loan the cash to Burleigh on the bonds and mortgages of $57,000 which Burleigh had proposed to give to him; the Provident Company agrees to furnish the cash, $37,500; we then first hear of the Land Title Company as a party to the transaction. The Provident Company addresses to it the letter of July 26, 1901, in which it states that it has agreed to loan to the holder of the title (Burleigh) $57,000 on certain bonds and mortgages on specified terms, and the Provident Company requests the Title Company, as insurers of the title and completion of the building, to observe certain forms and stipulations, and stating that the Provident Company will hand over $37,500 cash to the Title Company on receipt of settlement certificates and on compliance with certain terms arranged with David E. Dallam, representing the borrower. Five other letters followed from the Trust Company to the Title Company, insisting on changes or modifications of forms in the papers of the Title Company; in the last letter, dated March 24, 1902, the Provident Company states that it incloses its check for $37,479, being the amount of the loan, less a fee of $21.00 to Evan P. Lesher, and it further says, " Your letter of this date has been handed to us by your representative, stating that it is to be taken as a settlement certificate issued in conformity with the requirements of the sixth section of our letter to your company of July 26, 1901." It then states the amount of the check is the balance in accordance with the settlement certificates, specifying them, and provided Charles A. Chase executes in duplicate a certain agreement inclosed, and provided further, that the twenty-two several policies of insurance issued by the Title Company shall be clear of all exceptions. Up to this date no settlement certificates appears to have been delivered by the Title Company to the Provident Company, and, although the money was that day paid by the latter company to the Title Company, yet no insurance policies had been delivered to the Provident Company. It was while the transaction yet remained in this unfinished condition that three days afterwards, on March 26, 1902, Chase and the Provident Company enter into the agreement by which Chase

was to have an interest in the mortgages to the amount of $19,500, subordinate to the $37,500 of the Provident Company.

So far as appears, the transaction on the last named day had not been completed; the mortgage and bonds of Burleigh, according to the affidavit of defendant, on the security of which it had made the loan, had not been delivered; nor according to the writings made part of the record, the insurance policies clearly had not been delivered, in fact the loan of $37,500 to Burleigh on which everything depended had not yet been made. Both parties, Chase and the Provident Company, seem to have assumed it would be made and on that assumption they made the contract of March 26, 1902. Both assumed a contingency would happen; it was to the interest of both that it should happen, but neither undertook by the contract to guarantee to the other that it would happen, and neither is bound to the other for any loss from its failure to happen.

The Provident Company failed to make its loan to Burleigh because, for some reasons not disclosed, the Title Company and Burleigh failed to come to terms. This left the parties to stand just where they were when Chase applied to the Provident Company for the loan of $37,500 to Burleigh. He, probably, prematurely made his deed to Burleigh for the $19,500 worth of real estate; that deed for some reason went into the hands of the Title Company which immediately placed it on record; but upon the apparent facts and averments, that mistake is a subject for correction by equity proceedings between the parties to it, not of answerability by the Provident Company which company makes oath, that it was not a party to nor had it any connection with the $19,500 conveyance of real estate.

We think, if the averments of fact in the affidavit be sustained and the proper interpretation be put upon the agreement between plaintiff and defendant of March 26, 1902, the issue must go to the jury. While plaintiff, from his averments, may have sustained a loss, he sustained that loss not because the Provident Trust Company, from its averment in the affidavit, causelessly broke its agreement with him, but because the Title Company and Burleigh failed to come to terms in relation to the insurance policies. Therefore, the decree of the court below is affirmed.

We cannot but again advert to the utter futility of the act

of April 18, 1874, authorizing appeals from the common pleas where the court refuses to enter judgment for want of a sufficient affidavit of defense. If the purpose of that act had been to delay final judgment, instead of to hasten it, that purpose has been effectually accomplished, as is fully demonstrated by this appeal. The decree of the court below was made October 23, 1902; five days afterwards this appeal was taken. If instead of the appeal the issue had been promptly placed on the trial list, final judgment on verdict might have been had in the court below within two or three months, and an appeal to this court involving the same questions would now be passed upon; but this interlocutory appeal is taken under the act; the issue must now go back for trial and final judgment will be reached about a year later than if this present appeal had not been taken. As the act has utterly failed in its purpose it certainly ought to be repealed or modified.